IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

**PET FOOD INSTITUTE,**
**NEW MEXICO CHAMBER OF COMMERCE,**
**NEW MEXICO FARM & LIVESTOCK BUREAU,**
**PET UNDUSTRY JOINT ADVISORY COUNCIL,**
**And RIO GRANDE KENNEL CLUB,**

      **Plaintiffs,**

v.                                                                                                      No. Civ. 21-00048-JCH-SCY

**MICHELLE LUJAN GRISHAM, in her official**
**Capacity as the Governor of New Mexico, the STATE**
**OF NEW MEXICO, HECTOR BALDERAS, in his official**
**Capacity as the Attorney General of the State of New Mexico,**
**and JEFF M. WITTE, in his official capacity as the**
**Director/Secretary of the New Mexico Department of**
**Agriculture and Cabinet Secretary of Agriculture for the**
**State of New Mexico,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

This opinion addresses this Court's subject matter jurisdiction over the claims in this case in light of the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341. Plaintiffs in this case filed a declaratory judgment action in state court seeking to declare Senate Bill 57 (2020) (hereinafter "SB57") in violation of both the New Mexico and United States constitutions and the law of New Mexico. (First Am. Compl. 25, ¶¶ A-F, ECF No. 10). SB57 created a new section to the New Mexico Commercial Feed Act (the "Act"), N.M. Stat. Ann. § 76-19A-1, entitled the Spay and Neuter Program Fee. *See* N.M. Stat. Ann. § 76-19A-10.1, 2020 N.M. Laws Ch. 69 (S.B. 57). Effective July 1, 2020, SB 57 directed that the Department "shall collect an annual fee on each pet food registered with the department." *Id.* § 76-19A-10.1(A). The annual fee was $50.00 beginning

January 1, 2021, raised to $75.00 on January 1, 2022, and will increase to $100.00 on and after January 1, 2023 (hereinafter the "Fee" or "Fees"). *Id.*

After removing the case to federal court, Defendants Governor Michelle Lujan Grisham, the State of New Mexico, New Mexico Attorney General Hector Balderas, and Jeff Witte, Director/Secretary of the New Mexico Department of Agriculture and Cabinet Secretary of Agriculture for the State of New Mexico, collectively "Defendants," filed a Motion and Memorandum in Support of Motion to Dismiss (ECF No. 20), seeking to dismiss all claims in the case. In considering the merits of the motion to dismiss, a question of jurisdiction was mentioned in the briefs that the Court determined might require remand of this matter to the state court. After setting out its concerns, the Court ordered the parties to file briefs addressing whether this Court lacks subject matter jurisdiction over this case under the Tax Injunction Act. (*See* Mem. Op. and Order 15, ECF No. 32). Having considered the parties' briefs and the law, the Court concludes that the TIA divests this Court of subject matter jurisdiction over this case and that it must remand the case.

**I.  BACKGROUND**

**A. Senate Bill 57**

All commercial feed, including dog and cat pet food, but excluding customer-formula feed, must be registered with the New Mexico Department of Agriculture (the "Department") before it can be distributed in New Mexico. *See* N.M. Stat. Ann. § 76-19A-2(F) & (P); § 76-19A-10(A). Pet food registrations must be accompanied by a $2.00 registration fee, and they expire each year on December 31st. N.M. Stat. Ann. § 76-19A-10(A). SB57's annual fee applies to each pet food label, subject to limited exceptions, that does not vary based on the amount of product distributed into or sold within New Mexico. (First Am. Compl. ¶¶ 45, 47, ECF No. 10.) A manufacturer thus

may be required to register hundreds of separate labels with the Department annually. (*Id.* ¶ 46.) The Act contains exclusions for the Fees for veterinarian-prescribed diet pet food and for "pet food manufactured by a person who demonstrates to the board, in a manner prescribed by the board, that the person's tax-year annual gross revenue from the distribution of pet food is no more than three million dollars ($3,000,000)." N.M. Stat. Ann. § 76-19A-10.1(B)(1) & (2).

The "fee collected" is distributed as follows: 96% is deposited with the state treasurer for "the statewide spay and neuter subaccount of the animal care and facility fund," and 4% is distributed to the Department to administer the Commercial Feed Act. N.M. Stat. Ann. § 76-19A-10.1(C). Money in the animal care and facility fund must be used to carry out the dog and cat spay and neuter assistance program and for reasonable administrative costs (not to exceed 5% of fees distributed to the subaccount). N.M. Stat. Ann. § 77-1B-4(D). The spay and neuter assistance program is limited to "individuals who have, or to nonprofit organizations that shall only provide assistance to service recipients who have, a household income that does not exceed" 200% of the current federal poverty level guidelines. N.M. Stat. Ann. § 61-14-7.1(B). SB57 delegates to the animal sheltering committee the duty to develop the criteria for the program and for qualifications for assistance. *See* N.M. Stat. Ann. § 61-14-7.1(A)-(B).

The Department may refuse or cancel a registration if the application or applicant fails to comply with the provisions of the Commercial Feed Act. *See* N.M. Stat. Ann. § 76-19A-10(C). The Act sets forth procedures for the Department to follow to withdraw from distribution or seize commercial feed that a distributor is distributing in violation of any provisions of the Act. *See id.* § 76-19A-13.

**B. Procedural History**

Plaintiffs Pet Food Institute, New Mexico Chamber of Commerce, Pet Industry Joint Advisory Council, New Mexico Farm and Livestock Bureau, and Rio Grande Kennel Club, collectively "Plaintiffs," brought suit against Defendants for a declaration that the Fee violates the Commerce Clause because it is not fairly apportioned, it discriminates against interstate commerce, and/or it is not fairly related to the services provided by the State. (First Am. Compl. 25, ¶ A, ECF No. 10.) Additionally, they request declarations that the Fee violates the Equal Protection Clause of both the United States and New Mexico constitutions; violates the New Mexico Anti-Donation Clause; is invalid under New Mexico law because it does not substantially relate to any services provided by the State and exceeds the amount reasonably necessary to cover administrative costs; and finally, is void for vagueness because, while labeled a Fee, it does not function as one. (*Id*. ¶¶ B-F.)

Defendants removed the case on the basis of federal question jurisdiction, (Notice of Removal 2, ECF No. 1), and then moved to dismiss Plaintiffs' first amended complaint on six grounds. Plaintiffs responded to the motion, and in a footnote in their response, asserted that the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, does not divest this Court of subject matter jurisdiction, even though they contend that the Fee is actually a tax. (Pl.'s Resp. 13-14 n.3, ECF No. 22.) Defendants did not address the impact of the TIA in their briefs or in their Notice of Removal. After setting forth the legal grounds for which this Court was concerned the TIA divested this Court of jurisdiction, the Court ordered additional briefs on the subject because of this Court's independent obligation to ensure that it has authority over the case. *See Hill v. Kemp*, 478 F.3d 1236, 1246-47 (10th Cir. 2007) ("the Supreme Court has gone so far as to hold that the TIA deprived it of jurisdiction even in cases where the defendant State argued in favor of federal court review").

Defendants in their supplemental brief explained that they continue to maintain that the Fees are not taxes. Nevertheless, following their own research on the TIA and for the purpose of determining subject matter jurisdiction only, "Defendants agree with the Court's legal analysis [Doc.32], and therefore, do not object to this matter being remanded to state court." (Defs.' Br. 2, ECF No. 34.) In their brief, Plaintiffs stated that they "find the Court's analysis in the Order insightful and therefore no longer contend this Court has jurisdiction based on the precedence set forth in *N.F.I.B.* or *Hibbs*." (Pls.' Br. 4 n.3, ECF No. 35 (citing *National Federation of Interdependent Business v. Sebelius*, 567 U.S. 519 (2012); *Hibbs v. Winn*, 542 U.S. 88 (2004).) After noting their consistent position that the Fee is a tax, Plaintiffs assert that if "the Court determines it does not have jurisdiction and remand is appropriate, Plaintiffs request the Court order the payment of just costs and actual expenses, including attorneys' fees incurred due to the Defendants' improper removal." (Pls.' Br. 1-2, ECF No. 35.)

## II.   STANDARD

A federal court has an independent duty to determine whether it has subject-matter jurisdiction over the case, even in the absence of challenge from any party. *1mage Software, Inc. v. Reynolds and Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006). A court may *sua sponte* raise the question of subject matter jurisdiction at any stage in the litigation. *Id.* Federal courts are to strictly construe the removal statutes and resolve all doubts against removal. *Fajen v. Foundation Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982). The removing party bears the burden of establishing federal jurisdiction. *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013).

## III.   ANALYSIS

### A.  The Tax Injunction Act divests this Court of jurisdiction

The TIA states: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA prevents a federal court from entering a declaratory judgment holding a state tax law unconstitutional. *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982). Whether a state-court remedy is "plain, speedy and efficient" depends on if it provides the taxpayer with a full hearing and judicial determination during which the taxpayer may raise any and all constitutional objections to the tax. *Id.* at 411.

Congress passed the TIA "to restrict 'the jurisdiction of the district courts of the United States over suits relating to the collection of State taxes.'" *Hibbs v. Winn*, 542 U.S. 88, 104 (2004) (quoting S. Rep. No. 1035, 75th Cong., 1st Sess., 1 (1937)). Congress sought to prevent taxpayers from avoiding paying their tax bill through use of a federal injunction that would disrupt state government finances. *See id.* at 104-05. The TIA applies in cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes, which would have the effect of reducing the flow of state tax revenue. *See id.* at 106-07. The *Hibbs* Court explained the two objectives of the TIA: (1) to eliminate disparities between taxpayers who could seek injunctive relief in federal court (usually based on diversity jurisdiction) and taxpayers who could only pursue relief in state courts, which generally required taxpayers to pay first and litigate later; and (2) to stop taxpayers from withholding large sums and disrupting state government finances. *Id.* at 104.

In *Hibbs*, the Supreme Court explained that Congress, in enacting the TIA, "directed taxpayers to pursue refund suits instead of attempting to restrain collections." *Id.* at 104. The Supreme Court distinguished third-party suits that were not seeking to stop the collection or to contest the validity of a tax imposed on the plaintiffs from cases subject to the TIA. *Id.* at 104. The latter cases to which the TIA are directed are those where plaintiffs attempt "to avoid paying their

6

tax bill by pursuing a challenge route *other than the one specified by the taxing authority*." *Id.* at 104-05 (emphasis added). The Supreme Court indicated in *Hibbs* that the proper method Congress intended for taxpayers to pursue the right to the disputed sums is through a state refund action, not a separate federal action. *See id.* at 103 (explaining that TIA was modeled after earlier federal law that had two purposes, the second of which was to require the right to disputed sums be determined in a suit for refund). *See also Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 522 (1981) ("The overall purpose of the Tax Injunction Act is consistent with the view that the 'plain, speedy and efficient remedy' exception to the Act's prohibition was only designed to require that the state remedy satisfy certain procedural criteria, and that Illinois' refund procedure meets such criteria."). That Plaintiffs paid the Fee first (*see* First Am. Compl. ¶¶ 15-16, 19-20, 24-25, ECF No. 10) does not establish that they have a right to litigate in federal court, rather than through the procedural avenue specified by the taxing authority.

Additionally, what the New Mexico legislature chose to label the purported tax is not dispositive, and *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) ("*N.F.I.B.*"), is not to the contrary. *N.F.I.B.* involved a challenge to the individual mandate in the Patient Protection and Affordable Care Act of 2010, 26 U.S.C. § 5000A, ("Affordable Care Act"), which requires individuals to buy a health insurance policy providing a minimum level of coverage. *Id.* at 530, 539. For individuals that do not comply with the mandate, they must make a "[s]hared responsibility payment" to the federal government, which is described as a "penalty," and is paid to the Internal Revenue Service with the person's taxes. *See id.* at 539. Before turning to the constitutionality of the individual mandate, the Supreme Court addressed whether it had the authority to so rule in light of the limitations imposed by the Anti-Injunction Act ("AIA"), which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall

7

be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." *Id.* at 543 (quoting 26 U.S.C. § 7421(a)).[1] The Court noted that the AIA barred litigation to enjoin the collection of taxes, so that taxes generally may be challenged only after they are paid, by suing for a refund. *Id.* Because the lawsuit was brought before the mandate was enforceable and the Internal Revenue Code treated the penalty as a tax, the question for the Supreme Court was whether the Anti-Injunction Act barred the suit. *Id.*

Examining the text of the of the respective statutes, the Supreme Court found meaningful that the Affordable Care Act described the "[s]hared responsibility payment" as a "penalty," rather than a "tax," and the AIA applies only when the plaintiff attempts to restrain the collection of any "tax." *Id.* While noting that "Congress cannot change whether an exaction is a tax or a penalty for *constitutional* purposes simply by describing it as one or the other," the Supreme Court determined that Congress's decision to label the shared responsibility payment as a "penalty" rather than a "tax" was "significant" in determining whether a challenge to the penalty fell under the Anti-Injunction Act. *Id.* at 544. Congress cannot expand its power, for example, by labeling a punishment as a "tax," but the Supreme Court relied on the fact that both statutes were creatures of Congress's creation, and how they relate to one another is up to Congress. *Id.* The Supreme Court concluded that the AIA did not apply to the suit, because the Affordable Care Act did not require that the penalty for failing to comply with the individual mandate be treated as a tax. *Id.* at 546.

*N.F.I.B.* does not govern here because its holding relied on the label given by Congress in two different statutes it created. The situation in this case is different because it involves the construction of laws created by two different legislative entities. Congress used the term "tax" in

---

[1] The TIA was modeled on the AIA, the latter of which concerns federal taxes. *Direct Marketing Ass'n v. Brohl*, 575 U.S. 1, 8 (2015).

the TIA, but the New Mexico legislature used the term "fee." Moreover, *N.F.I.B.* was not a TIA case.

More on point and controlling is the Tenth Circuit case of *Hill v. Kemp*. In *Hill*, the plaintiffs brought a First Amendment challenge to the constitutionality of Oklahoma's statutory scheme for specialty motor vehicle license plates, which imposed an additional cost in addition to normal licensing charges. *See* 478 F.3d at 1239-40, 1244. Prior to addressing the merits on the constitutional issues, the Tenth Circuit looked at whether the money paid to Oklahoma under its specialty licensing regime constituted a "tax" under the TIA that would preclude federal court jurisdiction. *See id.* at 1243-44.

It explained that to determine whether a charge or fee is a "tax" under the TIA, a court must first look at the TIA's plain terms. *Id.* at 1244. According to the Tenth Circuit, there were a couple meanings of "tax" at the time the TIA was enacted. *Id.* First, "tax" was defined at the time as an "enforced, usually proportional, contribution, esp. of money, levied on persons, income, land, commodities, etc., for the support of government and for the public needs; sometimes, a charge, as for a thing." *Id.* (quoting 3 *The New Century Dictionary of the English Language* 1949 (1927)). Another dictionary defined it as a "charge, esp. a pecuniary burden imposed by authority; specif., a charge or burden, usually pecuniary, laid upon persons or property for public purposes; a forced contribution of wealth to meet the public needs of a government." *Id.* (quoting *Webster's New International Dictionary of the English Language* 2587 (2d ed. 1934)). The *Hill* court concluded that, under either of the two definitions, the licensing regime involved taxes because the State was enforcing, through its power as a sovereign, a contribution of money levied on the distribution of a commodity and was plainly imposing a charge for a thing. *Id.*

The Tenth Circuit also found persuasive the way Judge Cooley distinguished between a tax and fee in his authoritative taxation treaty: "If revenue is the primary purpose, the imposition is a tax. Only those cases where regulation is the primary purpose can be specially referred to the police power." *Id.* & n.7 (quoting 1 Thomas M. Cooley, *The Law of Taxation* 99 (4th ed. 1924)). Where only $8 of each $35 plate sold went to the administration of the Oklahoma Registration Act, and the remaining funds went to a variety of public purposes, the circuit court had "no qualms" finding that the primary purpose of the scheme was revenue, and thus, a tax. *Id.* at 1240, 1244-45.

Next examining its precedent, the Tenth Circuit identified certain characteristics that help distinguish a regulatory fee incident to a State's police power and a "tax under State law" within the meaning of the TIA:

> [T]he classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to help defray an agency's regulatory expenses.

*Id.* at 1245 (quoting *Marcus v. Kansas, Dep't of Revenue*, 170 F.3d 1305, 1311 (10th Cir. 1999)).

The analysis in *Hill* compels a conclusion that the Fee is a "tax" under the TIA. The New Mexico legislature passed and set the Fees, not a regulatory body, weighing in favor of finding the Fee to be a tax. *Cf. Hill*, 478 F.3d at 1246 (explaining that Oklahoma Legislature created license plate assessment scheme and set fees by statutes, weighing in favor of holding the license plate assessments to be taxes). Second, most of the Fees collected raise revenue for public purposes rather than to cover administrative costs: 96% of the Fee is deposited with the state treasurer and credited to the statewide spay and neuter subaccount of the Animal Care and Facility Fund, while only 4% is distributed to the Department to administer the Commercial Feed Act. N.M. Stat. Ann. § 76-19A-10.1(C). The funds in the spay and neuter subaccount must be used to carry out spay

and neuter services and for the reasonable costs of administering the Animal Sheltering Act, the reasonable costs of which shall not exceed 5% of the total fees distributed to the subaccount. *See* N.M. Stat. Ann. § 77-1B-4(D). Consequently, the dominant purpose of the Fees is not to defray the cost associated with administering the Commercial Feed Act as to pet food manufacturers and distributors. Only 4% of the funds are allocated for such regulatory expenses. Instead, the dominant purpose of the funds is to benefit the general public in reducing the unwanted animal population, and more directly to benefit a subset of the general public – individual pet owners with household incomes that do not exceed 200% of federal poverty guidelines. *See* SB 57, sec. 1(B); Fiscal Impact Report, *Pet Food Fee for Neutering & Sheltering*, https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&ved=2ahUKEwjK8Ii44aj6AhXZF1kFHbhsA1AQFnoECAcQAQ&url=https%3A%2F%2Fwww.nmlegis.gov%2FSessions%2F20%2520Regular%2Ffirs%2FSB0057.PDF&usg=AOvVaw0rLgtNGpMDult8TLHTOMwb, at 3 (last visited Nov. 2, 2022). For the foregoing reasons, the Fees constitute "taxes under State law" within the meaning of the TIA. *Compare Hill*, 478 F.3d at 1245-46 (concluding that primary purpose of Oklahoma's specialty license plate scheme was to raise revenue, and thus was a tax, where majority of funds were to be disbursed for variety of public purposes); *with Marcus*, 170 F.3d at 1307, 1311-12 (concluding that assessment charged to disabled persons seeking disabled placard and identification card for special parking accommodations was regulatory fee where statute expressly tied monies collected to administration of motor vehicle registration laws and to covering costs of administering motor vehicle registration laws).

The question then is whether Plaintiffs have access to "a plain, speedy and efficient remedy" in New Mexico state courts. *See Hill*, 478 F.3d at 1253. The State meets these minimal criteria as long as it provides the taxpayer with adequate procedural due process that permits a

taxpayer to raise constitutional objections to the tax. *Id.* Under SB57, when the Department believes a person has not complied with the New Mexico Commercial Feed Act, it may file a complaint for seizure in the district court in the judicial district where the commercial feed is located, and no commercial feed may be condemned until after a hearing in the district court. *See* N.M. Stat. Ann. § 76-19A-13(C)-(D). The department may also apply to the district court for an injunction restraining any person from violating the Act, and a person adversely affected by any "act, order or ruling made pursuant to the provisions of the New Mexico Commercial Feed Act may appeal the decision as provided in Section 39-3-1.1 NMSA 1978." N.M. Stat. Ann. § 76-19A-14(A)-(B). Section 39-3-1.1 in turn sets forth the procedures for a person aggrieved by a final decision by an agency to appeal the decision to district court, which may set aside the decision for numerous reasons, including that the agency did not act in accordance with law. N.M. Stat. Ann. § 39-3-1.1(C)-(D). A party may further appeal to the court of appeals. *Id.* § 39-3-1.1(E). Neither party has argued that these state law remedies are inadequate. Consequently, Plaintiffs have an adequate remedy to bring their constitutional challenges to the Fees in the New Mexico courts. *Cf. Landowners*, 822 F. App'x at 801 (concluding that Colorado provided plaintiff taxpayers with adequate remedy where taxpayers could appeal denial of tax credit and receive an administrative hearing, and they could further appeal negative ruling in state court, and from there, to state appellate courts).

      For all the foregoing reasons, the Fees in SB57 are "taxes under State law" for purposes of the TIA, and thus, the TIA divests this Court of jurisdiction over this case. Accordingly, the Court will remand the case to state court for further proceedings.

### B. Attorneys' fees and costs will not be awarded

In their supplemental brief, Plaintiffs ask for attorney's fees, noting that Defendants in their motion to dismiss cited *Hill v. Kemp*, the case upon which the Court relies to find it lacks jurisdiction. A district court has discretion to award attorney's fees when it orders a remand. *Martin v. Franklin Capital Corp.*, 393 F.3d 1143, 1146 (10th Cir. 2004) (citing 28 U.S.C. § 1447(c)). Plaintiffs, however, themselves initially asserted in the briefing that this Court had jurisdiction over the case, indicating that Defendants had an arguable basis for removing the case. The Court will therefore deny Plaintiffs' request for attorney's fees and costs.

**IT IS THEREFORE ORDERED** that

1. This case is **REMANDED** to the First Judicial District Court, State of New Mexico.
2. Plaintiffs' request for attorneys' fees and costs is **DENIED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE